UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NO. 3:10CR108 (EBB) |
| JUAN RIVERA, JR. | : | September 15, 2010 |

## MEMORANDUM IN AID OF SENTENCING

On May 18, 2010, Juan Rivera entered a guilty plea to Count One of an Information charging him with False Information and Hoaxes in violation of 18 U.S.C. § 1038(a). In his guilty plea, and the plea agreement and stipulation, Mr. Rivera has accepted responsibility for his criminal misconduct.

Mr. Rivera is scheduled to be sentenced on October 8, 2010. He comes before this Court deeply remorseful for his conduct and fully aware of the wrongfulness of his actions. In advance of sentencing, he submits this memorandum to urge the Court, in the exercise of its duty to fashion a sentence tailored to be sufficient but not greater than necessary to serve the purposes of a sentence as set forth in 18 U.S.C. § 3553(a)(2).

## MR. RIVERA'S BACKGROUND AND HISTORY

Juan Rivera is one seven children born to the marital union of Juan and Elvira Rivera. He grew up in an intact family. There was no history of abuse within the home, and all of the family's basic needs were met. Mr. Rivera maintained a strong, positive relationship with his father until his death in 2006. He continues to be very close to his mother who is disabled due to a number of medical conditions.

Mr. Rivera quit school in the tenth grade. At the time that he left school he noted that the work was becoming increasingly difficult for him. His grades were average to below average. His exit from high school coincides with his beginning to experiment with marijuana. He was a regular user for approximately eight years but was able to recognize the negative impact his drug use was having on his life. At his own initiative and without the assistance of a substance abuse program, he ceased using marijuana and has remained drug free for nearly 20 years.

Mr. Rivera has been involved with his wife, Lesly Madrid-Rivera for approximately twelve years. They have two children together and Mr. Rivera has two adult children from previous relationships. Mr. Rivera is a loving and devoted husband and father. His priorities are providing for his family and spending time with his wife and children. He is currently employed at Cumberland Farms in Ansonia. This employment follows a year of unemployment. Mr. Rivera lost his previous job, one he had held for nearly ten years, as a result of this case. Finding new employment with the stigma of the circumstances of his termination from his last job has been particularly daunting. Over the last year Mr. Rivera has been discouraged, depressed and desperate at his inability to find work to help support his family.

Despite his current legal difficulties, Mr. Rivera has tremendous potential to overcome his current legal and economical troubles and continue to make a positive contribution to his family and to society. If given the opportunity, he will do whatever is necessary to repay his debt to the community. He is deeply remorseful for the serious lapse in judgement that precipitated the criminal charges in this case and is anxious to put this case behind him.

**DISCUSSION**

    **A.**    **Sentencing Framework**

Under *United States v. Booker*, 543 U.S. 220 (2005), this Court must consider the Sentencing Guidelines in tailoring a sentence to the particular circumstances of the individual offender and the specific offense in a case. The Court is no longer instructed that it "shall" impose a sentence within the Guidelines range. Instead, the Guidelines are now one of several factors the Court must "consider" in arriving at a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing. These purposes are:

(2) the need for the sentence imposed –

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a). In *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Second Circuit explained how courts should, post-*Booker*, approach sentencing and the determination of a fair sentence. The *Crosby* Court explained that under 18 U.S.C. § 3553(a), the sentencing judge must consider several factors, including the Guidelines. *Id.* at 110. The statutory duty to "consider" the Guidelines means that "a sentencing judge will normally have to determine the applicable Guidelines range," and "[t]he applicable Guidelines range is normally to be determined in the same manner as before *Booker/Fanfan*." *Id.* at 111. Although the sentencing judge must determine the Guidelines range in order to "consider" it, *Crosby* expressly declined to "determine what degree of consideration is required, or, to put it another way, what weight the sentencing judge should normally give to the applicable Guidelines range." *Id.* at 113. What a sentencing court must do, then, is "consider the Guidelines and all of the other factors listed in section 3553(a)." *Id.* After considering the relevant factors in light of the principle that "the Guidelines are no longer mandatory," the sentencing judge must decide "whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence." *Id.* The Second Circuit, in reviewing a sentence on appeal, has "decline[d] to establish any presumption, rebuttable or otherwise, that a Guidelines sentence is reasonable." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

In determining an appropriate sentence, the sentencing court must apply the "parsimony clause" set forth in 18 U.S.C. § 3553(a), which provides that the court "shall impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. The Second Circuit explained in *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006), that if the Court believes a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, it must choose the lower sentence. *See id.* at 142 (stating that where a Guidelines sentence is "in equipoise with [a] below-the-range sentence," the parsimony clause requires imposition of the lower sentence).

**B.     Mr. Rivera's Advisory Guideline Range.**

The Sentencing Guidelines, of course, calculate sentencing ranges based upon two primary

considerations: the defendant's criminal history and the circumstances relating to the offense for which the defendant is being sentenced. According to the government's calculation of Mr. Rivera's sentencing guidelines, he is subject to a base offense level of 12 pursuant to USSG § 2A6.1(a)(1) and a four-level enhancement pursuant to USSG §2A6.1(b)(4). Assuming a three-level reduction in his offense level based on his acknowledgment of responsibility and his prompt guilty plea he would have an adjusted offense level of 13. The parties are in agreement that Mr. Rivera falls into Criminal History Category I ("CHCI") because he has no prior criminal convictions. An offense level of 13 in CHC I yields an advisory guideline imprisonment range of 12-18 months. The government has stated in its sentencing memo that should the Court adopt this calculation the government would not oppose a four-level reduction in the offense level based on aberrant conduct. Should the Court choose to apply this reduction, the adjusted offense level would be 9, yielding an advisory imprisonment range of 4-10 months.

### C. Sentencing Considerations

There are circumstances in this case that are "of a kind or to a degree not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. §3553; USSG § 5K2.0. In particular, the defendant relies, both individually and in combination, on the following factors which justify a downward departure: 1) aberrant conduct; 2) defendant's lack of deliberation or planning in committing the offense and lack of intent to harm; 3) length of time until first crime; 4) defendant's employment history; 5) defendant already sufficiently punished by collateral consequences; 6) considerations under 18 U.S.C. § 3553(a); and 7) the totality of the circumstances.

#### 1. Aberrant Conduct.

Juan Rivera has no prior criminal record. Ever since he graduated from high school, he has worked to support himself and, later, his wife and their children. He is not a person who has failed to appreciate the wrongfulness of his offense conduct or the consequences that his conduct could have on his lifestyle and his family members. He is extremely remorseful and ashamed of his conduct in this case. Given his positive traits and background, his age, the length of time before he committed his first

crime, his strong work ethic and his remorse for his actions, he is extremely unlikely to offend again. The conduct that has brought Mr. Rivera before this Court is an aberration that is not likely to be repeated.

The Sentencing Commission addressed the issue of aberrant behavior in §5K2.20. Specifically, under USSG § 5K2.20(b), a court may depart downward "only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." USSG § 5K2.20. This case involves a very stupid lapse in judgement by Mr. Rivera. He wrote the notes in question as a prank he intended to play on a co-worker. He never intended that anyone but his co-worker see the notes. He had no intention of causing any fear or anxiety among the people who work in the Connecticut Financial Center and he most certainly had no intent to actually detonate an incendiary device in the building. This case involved a single, terrible mistake, made without planning or, more importantly, true appreciation of the potentially devastating effects this "joke" would have. It stands in stark contrast to Mr. Rivera's past history as an effective and responsible employee and a law-abiding citizen. Under the circumstances of this case, a departure is warranted. The government has noted in it's brief that it would not oppose a four-level departure on the basis of aberrant conduct.

### 2. Mr. Rivera's Lack of Deliberation or Planning in Committing the Offense and Lack of Intent to Harm.

The Second Circuit has recognized that lack of sophistication or "unusually unsurreptitious" conduct in committing an offense is a mitigating factor of a kind or to a degree not adequately considered by the guidelines. *United States v. Jagmohan*, 909 F.2d 61, 65 (2d Cir. 1990) (defendant paid bribe with a personal check). For the same reason that "more than minimal planning" is generally regarded as an aggravating factor calling for an increased sentence, "less than minimal planning" is a mitigating factor which warrants leniency.

It should go without question that Mr. Rivera's actions did not involve thought or planning. Indeed, had he actually exercised common sense, he would have anticipated the potentially devastating

consequences of his actions and would not have committed them in the first place. Mr. Rivera's actions were motivated by a desire to play what he believed would be a harmless prank on his co-worker. It cannot be stressed enough that Mr. Rivera never had a bomb or any sort of incendiary device and at no time had any intent to place a destructive device in the CFC. He did not undertake his actions to cause people to lose time from their work or to cause fear or apprehension. He did not intend his actions to result in the use of law enforcement personnel to search the building to rule out an actual bomb. His only thought was that the notes he wrote would be viewed by a single person, his co-worker, who would recognize the notes as a joke and react as such.

In considering the appropriate sentence in this case, the Court should consider the case of *United States v. Faryniarz*, 3:01CR253 (AVC). This case arose shortly after the terrorist attacks of September 11, 2001, in the wake of the increased vigilance against terrorist threats, most notably relating to the use of biological weapons such as anthrax. The case involved employees of the Department of Environmental Protection and dealt with a similar hoax involving anthrax. Mr. Faryniarz was found guilty of making false statements to federal agents after a jury trial. He received a year of probation. The individual who actually perpetrated the hoax was not prosecuted due to destruction of the key evidence. Both Faryniarz and the actual perpetrator lost their jobs. The *Faryniarz* case is factually identical to the instant case, although in the *Faryniarz* case the facility was shut down for a more prolonged period of time and several employees were subject to invasive decontamination procedures. This case is significant not just for the lenient sentence Mr. Faryniarz received, but also because the then Attorney General John Ashcroft used the case as an example of the harsh treatment the government would mete out to those who perpetrated anthrax hoaxes. If probation was a reasonable and appropriate sentence for an individual who lied to federal agents, then put the government to the burden of a trial and subsequently was found guilty by a jury, certainly Mr. Rivera's case warrants similar treatment.

### 3. Age When Committed First Crime and Low Likelihood of Recidivism.

Juan Rivera led a law-abiding, indeed an exemplary life until 2009 when he made the mistake of joking about a bomb, the conduct which brings him before this Court. He was criminally prosecuted

for the first and only time at the age of 43. Since the inception of this case Mr. Rivera has mentally tormented himself for his poor judgement. The emotional toll this case has taken on Mr. Rivera is much worse than any sentence of imprisonment could be. The Court is permitted to depart downward in cases where the guidelines fail to take into consideration the length of time during which the defendant refrains from engaging in criminal activity. In this case, that amount of time is 42 years. In consideration of this factor, the defendant seeks a non-incarceration sentence.

In *U.S. v. Ward*, 814 F. Supp. 23 (E.D.Va. 1993), the defendant faced a mandatory life sentence for his involvement in a drug conspiracy. The judge chose to depart downward based on the defendant's criminal history and his age. *Id.* at 24. In that case the court noted that

> While awarding defendants generally . . . some credit for leading relatively crime-free lives, the Criminal History Category of the Sentencing Guidelines does not account for the length of time a particular defendant refrains from criminal conduct . . . the guidelines do not distinguish between a nineteen-year-old and a sixty-year-old, both of whom have led crime-free lives and consequently are assigned the same low Criminal History Category.

*Id.* The Court concluded that "the length of time a person refrains from the commission of crimes, which is invariably tied to a person's age, is a factor that is critical to a court's determination of the sentence it should impose." *Id.*

Given Mr. Rivera's age at the time he first engaged in criminal conduct, a sentence of probation is warranted in this case. Additionally, given his age and his criminal history, he is unlikely to reoffend. It is anticipated that Mr. Rivera currently falls in CHC I. According to government statistics, offenders in CHC I have a substantially lower risk of recidivating within two years than do offenders in CHC VI. (See *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, United States Sentencing Commission, May, 2004). Given that Mr. Rivera is a low threat of recidivism, a sentence of probation is both reasonable and warranted.

### 4. Mr. Rivera's Excellent Employment History.

Ever since he has been old enough to hold a job, Mr. Rivera has been employed. For nearly 10 years he worked at the Connecticut Financial Center. He began his employment at the CFC as a mechanic's helper and over time advanced to the position of mechanic. He loved his job and he was

good at it. Prior to his employment at the CFC, he always maintained regular employment in order to support himself and his family. This has always been his most important priority.

"The Guidelines provide that previous employment record is not "ordinarily relevant" to the determination of whether a departure is warranted." *United States v. Jagmohan*, 909 F.2d at 65, *citing* USSG § 5H1.5. In the *Jagmohan* case, however, the court found that the defendant, an immigrant, "had been gainfully employed for the nine years since he had entered this country." *Id.* Similarly, Mr. Rivera has consistently maintained employment throughout his adult life. While this may not in itself justify a departure, when taken in conjunction with all of the factors enumerated in the defendant's Memorandum in Aid of Sentencing, a downward departure or non-guideline sentence is warranted.

### 5. Mr. Rivera Has Already Been Sufficiently Punished By Non-Criminal Collateral Consequences.

As a result of the conduct which brings him before this Court, Mr. Rivera was dismissed from a job he had held for approximately 10 years. In an instant, a thoughtless prank took away his source of income and his ability to support his family. Mr. Rivera found himself without employment during a period of severe economic upheaval, when many people were unemployed and jobs were very scarce. The circumstances of his termination as well as the economic conditions made it extremely difficult for him to find employment. His inability to provide for his family and the burden this placed on his wife has caused Mr. Rivera substantial mental anguish. Mr. Rivera only obtained employment as of June 21, 2010. He is working at Cumberland Farms and earns $9.50 per hour. This is a clear departure from his previous employment in which he earned $17.00 per hour, but it has been the only employment that he has been able to find for the past year.

Court's have found that non-criminal collateral consequences of a criminal act can serve as the basis for a downward departure or non-guideline sentence. For instance, in *United States v. Samaras*, 390 F.Supp.2d 805 (E.D. Wis., 2005), the Court found that a below guideline sentence was warranted because "as a consequence of his conviction and sentence, defendant lost a good public sector job, another factor not considered by the guidelines." *Id.* at 809. Given the mental and emotional toll this case has had on Mr. Rivera, the loss of his highly paid employment and the resulting financial and

marital stress, a non-incarceration sentence is both reasonable and appropriate.

  **6.  Considerations Under 18 U.S.C. § 3553(a).**

    **A.  Nature and Circumstances of the Offense and History and Characteristics of the Defendant.**

Section 3553(a)(1) is a "broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *Gall*, 128 S. Ct. at 596 n.6. It is not limited, and may not be limited, by the Commission's restrictive policy statements regarding what a judge may not consider. As Justice Stevens put it, the Commission "has not developed any standards or recommendations" for many individual characteristics, but "[t]hese are . . . matters that § 3553(a) authorizes the sentencing judge to consider," even though they are "not ordinarily considered" under the Guidelines. *Rita*, 127 S. Ct. at 2473 (Stevens, J. Concurring).

Mr. Rivera comes from a good family. He has worked his entire adult life and has been, until now, a responsible citizen. He has no criminal convictions. He works to support his wife and their children. Prior to this case, he had never been in any sort of trouble in his life. This case and all that it stands for is completely contrary to the way Mr. Rivera was raised and the way in which he has conducted his life thus far.

Clearly, this case involves significant criminal conduct, however, the criminal activity on Mr. Rivera's part was committed spontaneously, without giving consideration to the potential consequences of his actions and with no intent to frighten or harm anyone. While Mr. Rivera's colossal lack of judgement and naivete does not excuse the offense conduct, it certainly puts the nature and circumstances of the offense into context.

    **B.  Seriousness of the Offense, Respect for the Law, Just Punishment.**

Section 3553(a)(2)(A) requires the judge to consider "the need for the sentence impose . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The purposes set forth in this section are generally referred to collectively as "retribution." A sentence that is excessive in light of the seriousness of the offense promotes disrespect for the law and provides unjust punishment.

Mr. Rivera's offense, while very serious, is not the crime of the century. He took a prank too far, making a false threat about an issue that, once discovered, could not be ignored. That false threat led to people losing time from work while others ascertained that the threat was indeed a hoax. While the offense was significant and had serious repercussions, it was not done with any malicious intent or any intent to harm. No one was hurt as a result of the hoax. While Mr. Rivera understands that some punishment is warranted, the advisory imprisonment term far exceeds the seriousness of the offense, and undermines the other sentencing factors.

### C. Adequate Deterrence to Criminal Conduct.

Section 3553(a)(2)(B) requires the judge to consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct." While many believe that the higher the sentence, the greater the effect in deterring others, the empirical research shows no relationship between sentence length and deterrence. The general research finding is that "deterrence works," in the sense that there is less crime with a criminal justice system than there would be without one. But the question for the Court is "marginal deterrence," *i.e.*, whether any particular quantum of punishment results in increased deterrence and thus decreased crime. Here, the findings are uniformly negative: there is no evidence that increases in sentence length reduce crime through deterrence. "Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."[1]

The reason that higher sentences do not have a deterrent effect is that potential criminals are not generally aware of the penalties for their prospective crimes, do not believe they will be apprehended

---

[1] Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research, 28-29 (2006). *See also* David Weisburd et al, *Specific Deterrence in a Sample of Offenders convicted of White-Collar Crimes*, 33 Criminology 587 (1995) (finding that in a study of federal white collar offenders in the pre-guideline era, there was no difference in deterrence between probation and imprisonment); Andrew von Hirsch, et al, *Criminal Deterrence and Sentence Severity: an Analysis of Recent Research* 91999) (examining effects of changes to both certainty and severity of punishment and finding that there is no basis to infer that "increasing the severity of sentences generally is capable of enhancing deterrent effects.").

and convicted, and simply do not consider sentence consequences in the manner one might expect of rational decision makers. Tonry, *supra* n.11, at 28-29. A recent review of the issue concluded: "There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms.[2] In this case, Mr. Rivera did not perceive that he was committing a crime, he intended only to play a prank on a co-worker. The potential ramifications of his actions never entered his consciousness. Had he actually considered that he would be federally prosecuted, exposed to a term of imprisonment, and lose his employment, he certainly would not have played this prank, but that type of cost-benefit analysis never took place. In any event, simply losing his employment has been an adequate deterrent to any future tomfoolery.

Another problem with justifying punishment as a means to deter other, besides its ineffectiveness, is that it is immoral to punish one person merely to promote deterrence of others.

> Judicial punishment can never be administered merely as a means for promoting another good either with regard to the criminal himself or to civil society, but must in all cases be imposed only because the individual on whom it is inflicted has committed a crime. For one man ought never be dealt with merely as a means subservient to the purpose of another.[3]

Given the ineffectiveness of and ethical problems with general deterrence and the financial costs to society of imprisoning an individual ($25,894.50 per year),[4] general deterrence, particularly in Mr. Rivera's case, is not a good reason for a lengthy prison term. *See United States v. Cole*, 622 F. Supp. 2d 632, 638-40 (N.D. Ohio 2008) (disagreeing with the theory that an offender should be incarcerated for a period longer than retribution requires for the purpose of deterrence).

---

[2] Gary Kleck, et al, *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005).

[3] Immanuel Kant, *The Philosophy of Law: An Exposition of the Fundamental Principles of Jurisprudence as the Science of Right* ¶ 549 (W. Hastie trans., Edinburgh: Clark, 1887).

[4] *Costs of Incarceration and Supervised Release*, available at http://www.uscourts.gov/newsroom/2009, last visited March 16, 2010.

### D. Protection of the Public From Further Crimes of the Defendant.

Section 3553(a)(2)(C) requires the judge to consider "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." This purpose has to do with the risk of recidivism and the danger posed by the defendant, if any. There is nothing in the record to even suggest that Mr. Rivera poses a threat to the community. Indeed, while he has been on pre-trial release, he has complied with the conditions of his bond and secured employment. This case is not evidence of a pattern of criminal activity, but rather an isolated event that will never be repeated. Mr. Rivera has the potential to be an asset to the community, not a threat, and no term of imprisonment is necessary to effect the protection of the community.

### E. Rehabilitation in the Most Effective Manner and Kinds of Sentences Available.

Section 3553(a)(2)(D) requires the judge to consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Section 3553(a)(3) requires the judge to consider all of "the kinds of sentences available" by statute. When the Sentencing Reform Act was enacted, Congress did not believe that prison was rehabilitative. Today, there is substantial evidence that prison, by disrupting employment, reducing prospects of future employment, weakening family ties, and exposing less serious offenders to more serious offenders, leads to increased recidivism,[5] and that community treatment programs are more effective in reducing recidivism than prison treatment programs.[6]

There is no rehabilitative goal that requires a sentence of imprisonment, however short, to

---

[5] *See* Lynne M. Vieraitis, Tomaslav V. Kovandzie, Thomas B. Marvel, *The Criminogenic Effects of Imprisonment: Evidence from State Panel Data 1974-2002*, 6 Criminology & Public Policy 589 (2007).

[6] For example, the Washington State Institute for Public Policy found that community drug treatment reduces recidivism by 9.3%, while prison drug treatment programs reduce recidivism by only 5.7%, and that treatment-oriented intensive supervision reduces recidivism by 16.7%. *See Washington State Institution for Public Policy, Evidence-Based Public Policy Options to Reduce Future Prison Construction, Criminal Justice Costs, and Crime Rates,* Exh. 4 at p. 9 (October 2006), available at http://www.wsipp.wa.gov/rptfiles/06-10-1201.pdf, last visited March 15, 2010.

accomplish. Any term of imprisonment would be more than **necessary** to serve the statutory purposes of sentencing and thus contrary to 18 U.S.C. § 3553(a). Mr. Rivera is a law-abiding citizen. He is employed. He supports his children. He is a responsible adult. He is not in need of any rehabilitative programs that would be available within the Bureau of Prisons. A term of imprisonment will cause Mr. Rivera to lose his current employment, a job that took him over a year to secure, and will make it even harder for him to obtain employment once he is released. A better use of the Court's resources would be to sentence Mr. Rivera to a term of probation which would allow the Court to maintain a vigilant eye on Mr. Rivera.

### 8. The Totality of the Circumstances.

Should this Court determine that none of the grounds stated above individually justify a downward departure, collectively they would provide ample grounds to depart when considering *United States v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996).

**CONCLUSION**

For the reasons discussed in this memorandum, in addition to any other deemed appropriate by the Court, Mr. Rivera respectfully requests a non-incarceration sentence. Such a sentence would be sufficient but not greater than necessary to meet all the purposes of sentencing in this case.

    Respectfully submitted,

    THE DEFENDANT,
    Juan Rivera, Jr.

    THOMAS G. DENNIS
    FEDERAL DEFENDER

Dated: September 15, 2010    /s/
    Deirdre A. Murray
    Assistant Federal Defender
    10 Columbus Blvd, 6th FL
    Hartford, CT 06106
    Phone: (860) 493-6260
    Bar No.: ct22981
    Email: deirdre.murray@fd.org

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on September 15, 2010, a copy of the foregoing Memorandum in Aid of Sentencing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                        /s/
                                        Deirdre A. Murray